**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**SHEFFIELD T. SMITH,**

      **Petitioner,**

**vs.**                                      **Case No. 4:12cv17-RV/CAS**

**MICHAEL D. CREWS, Secretary,
Florida Department of Corrections,[1]**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On January 4, 2012, Petitioner Sheffield T. Smith, proceeding pro se, filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a supporting

memorandum.  Docs. 1 and 2.  After direction by this Court (Doc. 8), Petitioner filed an

amended § 2254 petition and supporting memorandum (Docs. 9 and 10).  On May 17,

2012, Respondent filed a response, with exhibits.  Doc. 13.  Petitioner filed a reply on

July 12, 2012.  Doc. 17.

---

[1]The Clerk of Court shall substitute Michael D. Crews as Secretary of the Florida
Department of Corrections in place of Kenneth S. Tucker.  Michael D. Crews became
Secretary on December 17, 2012, and shall be automatically substituted pursuant to
Federal Rule of Civil Procedure 25(d).

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## State Court Proceedings

By information filed on June 7, 2007, in the Second Judicial Circuit, Liberty County, in case number 07-058-CF, the State of Florida charged Petitioner Sheffield T. Smith with two counts, in connection with events that took place on January 20, 2007: (1) sale or possession of a controlled substance with intent to sell within 1000 feet of a church, a first degree felony, in violation of section 893.13(1)(e)1., Florida Statutes; and (2) possession of a firearm by a convicted felon, a second degree felony, in violation of section 790.23(1)(a), Florida Statutes.  Doc. 13 Ex. A at 14.  The counts were severed, and Smith proceeded to a jury trial on September 18, 2007, on only Count 2.  *Id.* Ex. B. Smith did not testify.  *Id.* at 123-24.  The jury found him guilty as charged and found he did not actually possess the firearm.  *Id.* at 167-68; Ex. A at 18.  On October 8, 2007, the trial court judge adjudicated Smith guilty and sentenced him to ten (10) years in prison, followed by five (5) years of probation.  *Id.* Ex. A at 18-27.

Smith appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D07-5622, and filed an Initial Brief raising one point:

The trial court's failure to instruct on constructive possession was fundamental error requiring a new trial.  Doc. 13 Ex. D at i.  The State filed an Answer Brief.  *Id.* Ex. E. Smith filed a Reply Brief.  *Id.* Ex. F.  On April 6, 2009, the First DCA affirmed the case per curiam, with no written opinion.  *Id.* Ex. G; Smith v. State, 6 So. 3d 60 (Fla. 1st DCA 2009) (table).

Meanwhile, on January 24, 2009, Smith filed a pro se motion for post-conviction relief in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.850.  Doc. 13 Ex. H.  He filed a second Rule 3.850 motion on June 19, 2009.  *Id.* Ex. I.  By order dated July 14, 2009, the state post-conviction trial court struck the first Rule 3.850 motion, finding it facially insufficient, and allowed Smith leave to amend within thirty (30) days.  *Id.* Ex. J.   It appears the state court may have also stricken the Rule 3.850 motion filed on June 19, 2009.  *See id.* PD-1 at 7; Doc. 13 at 2.  In any event, on July 23, 2009, Smith filed an Amended Motion for Post Conviction Relief pursuant to Rule 3.850.  Doc. 13 Ex. K at 39-55.  Then, on September 15, 2009, Smith filed a Second Amended Motion for Postconviction Relief pursuant to Rule 3.850 and a supporting memorandum.  Doc. 13 Ex. K at 1-11 (motion), 12-38 (memorandum).

In an interlocutory order dated July 22, 2010, the state post-conviction trial court denied Grounds 5 through 7 of the Rule 3.850 motion, set an evidentiary hearing on Grounds 1 through 4, and appointed counsel for Smith.  Doc. 12 Ex. L at 1-5.  The evidentiary hearing took place on October 4, 2010.  *Id.* Ex. M (transcript).  In an order entered December 15, 2010, the post-conviction trial court denied all relief.  *Id.* Ex. K at 105.

Smith appealed the denial of his Rule 3.850 motion, pro se, to the First DCA, and he filed an Initial Brief in the appeal, assigned case number 1D11-1140.  Doc. 13 Ex. N.  The State filed a notice that it would not file an Answer Brief.  *Id.* Ex. O.  Smith filed a Reply Brief.  *Id.* Ex. P.  The First DCA per curiam affirmed the case without an opinion on September 21, 2011, and the mandate issued October 18, 2011.  Doc. 13 Exs. Q, R; Smith v. State, 70 So. 3d 592 (Fla. 1st DCA 2011) (table).

As indicated above, on January 4, 2012, Smith timely filed a § 2254 petition in this Court.  Doc. 1.  He subsequently filed an amended § 2254 petition.  Doc. 9.  Petitioner Smith raises five grounds:

> (1) Denial of his Fifth and Fourteenth Amendment rights to due process of law when the state trial court failed to instruct the jury on constructive possession.  Doc. 9 at 4.

> (2) Denial of his Sixth and Fourteenth Amendment rights to effective assistance of counsel when defense counsel failed to advise Petitioner of a viable defense of entrapment.  *Id.*

> (3) Denial of his Sixth and Fourteenth Amendment rights to effective assistance of counsel when defense counsel elicited damaging testimonial evidence during direct examination of Clarence Aikens during the trial and failed to correct this testimony.  *Id.* at 5.

> (4) Denial of his Sixth and Fourteenth Amendment rights to effective assistance of counsel when counsel failed to investigate and call Shawn Aikens as a witness at the trial.  *Id.*

> (5) Cumulative ineffective assistance of counsel.  *Id.* at 6I.

Respondent has filed an answer with exhibits.  Doc. 13.  Petitioner has filed a reply. Doc. 17.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See* Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated on the merits in State court proceedings,' § 2254(d), an additional restriction applies." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant relief unless the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt.'" Cullen, 131

S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford

v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that

was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct.

at 1388.

      For claims of ineffective assistance of counsel (IAC), the U.S. Supreme Court

has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.

Strickland, 466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant must show

that counsel's performance fell below an objective standard of reasonableness."  Id. at

688.  To demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  Id. at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  Id.  For this Court's purposes,

importantly, "[t]he question 'is not whether a federal court believes the state court's

determination' under the Strickland standard 'was incorrect but whether that

determination was unreasonable – a substantially higher threshold.'" Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473

(2007)).  "And, because the Strickland standard is a general standard, a state court has

even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."  *Id.*

**<u>Ground 1</u>: Trial Court Failed to Instruct Jury on Constructive Possession**

In his first ground, Petitioner Smith asserts the state trial court erred by not instructing the jury on constructive possession.  Doc. 9 at 4.  Smith explains that his defense, to the charge of possession of a firearm by a convicted felon, was that he did not possess the rifle, either actually or constructively.  *Id.* at 6A.   Smith argues that "the element of constructive possession was clearly in dispute" and, by not instructing the jury on constructive possession, the state trial court violated his rights to due process under the Fifth and Fourteenth Amendments to the U.S. Constitution and reduced the State's burden of proof on an essential, disputed element of the offense.  *Id.* at 4, 6A.

As Smith and Respondent indicate, this issue was the only point raised in the direct appeal.  Doc. 9 at 6A; Doc. 13 at 3.  It was raised there as one alleging fundamental error.  Doc. 13 Ex. D at 16.  Importantly, for federal habeas purposes, however, the point on appeal did not present a federal claim, as Respondent indicates. Doc. 13 at 3; *see* Doc. 13 Ex. D at i, 16-20.  Indeed, the Initial Brief does not cite any federal constitutional or statutory provisions, nor any federal cases.  Doc. 13 Ex. D at ii, 16-20.  Likewise, the State's Answer Brief makes no mention of any federal law.  *Id.* Ex. E at 14-23.  Because Smith did not fairly present in state court any federal claim involved in this ground, this ground it is unexhausted and procedurally defaulted.  *See* <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999) ("Before a federal court may grant

habeas relief to a state prisoner, the prisoner must exhaust his remedies in state

court."); Zeigler v. Crosby, 345 F.3d 1300, 1307 (11th Cir. 2003) (explaining that federal

habeas claims were not raised in state court where direct appeal made no reference to

federal constitutional issues raised in federal habeas petition); *see also, e.g.*, McNair v.

Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (explaining exhaustion requirement:

"[T]o ensure that state courts have the first opportunity to hear all claims, federal courts

have required a state prisoner to present the state courts with the same claim he urges

upon the federal courts.");.  Smith has not shown cause and prejudice to excuse the

default.  *See, e.g.,* Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the

petitioner has failed to exhaust state remedies that are no longer available, that failure is

a procedural default which will bar federal habeas relief, unless either the cause and

prejudice or the fundamental miscarriage of justice exception is applicable.").

Further, even assuming Smith's claim, as presented to the state court, contained

a federal component, no federal habeas relief is warranted.  The First DCA per curiam

affirmed the case without an opinion.  This ruling is entitled to AEDPA deference and

review is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d); Cullen,

131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright v. Sec'y of Dep't of Corr., 278

F.3d 1245, 1255 (11th Cir. 2002).

A review of the record reflects the state trial court did not commit fundamental

error in instructing the jury.  During the charge conference, the following transpired:

> MR. COMBS [prosecutor]: . . . There's a requirement now for the check-off
> for did actually possess, did not actually possess.

. . . .

THE COURT: In the instructions to the jury, I didn't have an instruction about you need to find whether or not he did possess or did not possess.

MR. COMBS: That need to be added in there, Judge.  You can do that when you read the verdict forms to them and instruct them that they need to – there's a check-off here for them to make the determination, did he actually possess it or not actually possess it.

Under the charge, I believe everything needs to be read under the felon's possession of weapons under 10.15, except for (2)(b).  (2)(b) is the carried, concealed, ordinary sight of another person.  That's not alleged.

THE COURT: Where are you now?

MR. COMBS:  I'm on the standard jury instructions, 10.15, felon in possession of weapons.  Number one, defendant has been convicted of, and it says "prior offense."  As far as I'm concerned, you can just simply say "convicted of a felony."  It doesn't need to be specific.

And then, two, after the conviction, defendant knowingly – it's (2)(a), owned, had in his care, custody, possession, or control a firearm. (2)(b) does not apply.

Then, everything else applies, I believe.  All the definition of possession.

THE COURT: You want the whole long definition on possession?

MR. COMBS: Yes, sir.

THE COURT: All right. . . .

Doc. 13 Ex. B at 121-23 (emphasis added).  In particular, the court gave the following

instructions, in pertinent part:

The defendant in this case has been charged with the offense of possession of firearm by a convicted felon.  In order to prove the crime of possession of firearm by a convicted felon, the State must prove the following two elements beyond a reasonable doubt: One, the defendant, Sheffield Tyrone Smith, had been convicted of a felony; and, two, after the

conviction, Sheffield Tyrone Smith knowingly owned or had in his care, custody, possession, or control a firearm.

. . . .

"Care and custody" mean intermediate charge and control exercised by a person over a named object.

"Care," "custody," and "control" may be used interchangeably.

"To possess" means to have personal charge of or exercise the right of ownership, management, or control over the thing possessed.

Possession may be actual. "Actual possession" means the thing is in the hand of or on the person, or the thing is in a container in the hand of or on the person, or the thing is so close as to be within ready reach and is in the under the control of the person.

Possession may be joint. That is, two or more persons may jointly have possession of an article exercising control over it. In that case, each of the persons is considered to be in possession of the article.

If the person has exclusive possession of a thing, knowledge of its presence may be inferred. If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred.

Doc. 13 Ex. B at 154-55. During deliberations, the jury sent a request to the court for a copy of the statute which Smith was charged with violating. *Id.* at 163. The court answered by re-reading the portion of the instructions including the above excerpt. *Id.* at 165-66. Both sides indicated they had no objections to the instructions as given by the court. *Id.* at 166-67. The jury found Smith guilty and specifically found he did not actually possess the firearm. *Id.* at 167.

On appeal, as indicated above, Smith asserted fundamental error because the trial court did not give a specific instruction on constructive possession. It appears the trial court read the bulk of the standard jury instructions in place prior to the 2007

revisions.  *Compare* Std. Jury Instr. - Crim. Cases No. 92-1, 603 So. 2d 1175, A-42 (Fla.

1992), *with* In re Std. Jury Instr. Crim. Cases No. 2005-1, 953 So. 2d 495, 499-500 (Fla.

Mar. 29, 2007).  Although the trial court did not read an instruction defining constructive

possession, the court did instruct the jury on the elements of the crime of possession of

a firearm by a convicted felon, the charge against Smith.  *See, e.g.*, Creamer v. State,

605 So. 2d 541, 542 (Fla. 1st DCA 1992) (reversing conviction for possession of firearm

by convicted felon and remanding for new trial, where trial court erred in refusing to

instruct jury that they were required to find defendant "knowingly" possessed firearm

and "this error was preserved by a proper objection and is not harmless"); Garmon v.

State, 772 So. 2d 43, 47 (Fla. 4th DCA 2000) ("To prove a prima facie corpus delicti of

[the charge of possession of a firearm by a convicted felon] the state was obligated to

prove Garmon was a convicted felon (which was stipulated to) and that he knowingly

owned or had a firearm in his care, custody, possession, or control.").  *See also* U.S. v.

Miller, 485 F. App'x 983 (11th Cir. 2012) (affirming conviction for possession of firearm

by convicted felon and finding no abuse of discretion in district court's refusal to give

defendant's proposed jury instruction on constructive possession where instruction

given substantially covered proposed charge and failure to give requested charge did

not substantially impair defendant's ability to present effective defense); McClinton v.

McNeil, 615 F. Supp. 2d 1310, 1329 (M.D. Fla. 2008) ("The appropriate question on

habeas review of state court jury instructions is 'whether the ailing instruction by itself so

infected the entire trial that the resulting conviction violates due process.' Estelle v.

McGuire, 502 U.S. 62, 72 . . . (1991).  The defective instruction "'may not be judged in

artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record.' *Id.*").

  The jury instructions in this case were not fundamentally erroneous.  *See, e.g.*, Wiley v. State, 830 So. 2d 889, 890 (Fla. 1st DCA 2002) ("An error in a jury instruction constitutes fundamental error if it concerns the total failure to instruct the jury on an essential element of the crime and that element is disputed at trial." (citing State v. Delva, 575 So. 2d 643 (Fla. 1991))); Duncan v. State, 986 So. 2d 653, 656 (Fla. 4th DCA 2008) ("An appellate court will not reverse a trial court's decision regarding a jury instruction absent prejudicial error that would result in a miscarriage of justice."); Crespo v. State, 505 So. 2d 685, 685-86 (Fla. 3d DCA 1987) (no reversal required where trial court failed to give standard jury instruction defining "care and custody" in trial for possession of firearm by convicted felon, although court indicated it would give such instruction and thought it had, but defense counsel failed to object to omission).  The instructions as given covered the essential elements of the crime and did not impair the ability to present an effective defense.  Here, the issue at trial focused on whether the events transpired as the State presented (Smith agreed to sell the firearm to Charlie Williams, meeting was arranged for sale to occur, then Smith retrieved firearm from Aikens' house, test-fired it, and sold it to Williams for $190) or as the defense argued (denial that he committed offense, Smith was not involved in the sale and never had firearm, Shawn Aikens retrieved gun from house and fired it).  Doc. 13 Ex. B at 65-74, 95-96 (testimony of Williams in support of State's case); 127-30 (testimony of Clarence Aikens in support of defense theory); 134-35 (prosecutor's closing); 144-45, 147

(defense counsel's closing).  Indeed, as the State pointed out in the Answer Brief filed in the direct appeal, perhaps "the omission of the definition of constructive possession was more favorable to Appellant's defense that he never had the rifle in hand nor did he have the rifle in his home, since it focused the jury's attention on the definition of actual possession and the presumptions in favor of Appellant since he did not have exclusive control." Doc. 13 Ex. E at 11.

Based on the foregoing, Smith has not shown the state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### **Ground 2**: IAC - Failure to Advise of Viable Entrapment Defense

In his second ground, Petitioner Smith asserts his attorney rendered ineffective assistance by failing to advise him of a viable defense of entrapment.  Doc. 1 at 4, 6B-6D.  As Respondent indicates, Smith presented this ground to the state court as the first claim in his Rule 3.850 motion.  Doc. 13 at 7; *see* Doc. 13 Ex. K at 60-69.  The state post-conviction trial court denied the claim, making the following findings on the record at the conclusion of the evidentiary hearing:

> THE COURT: It is the opinion and finding of the Court that there is no merit to any of these grounds on his motion for ineffective assistance of counsel and post-conviction relief.  The greater weight of the evidence clearly shows that the defendant never suggested to his counsel that an entrapment defense should be presented.

> The defendant's position has consistently been with his counsel that he never possessed the firearm. Not the, fact that he was entrapped into committing this offense. So that grounds for post-conviction relief for failure to raise the entrapment defense is totally without merit.

Doc. 13 Ex. M at 42-43. These rulings, affirmed on appeal without opinion, are entitled

to AEDPA deference and review is limited to the record before the state court. *See* 28

U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright, 278

F.3d at 1255. The record supports the state court's findings.

In particular, defense counsel testified at the evidentiary hearing that he talked to

Smith throughout the trial and Smith did not mention anything about entrapment:

> Q Okay. Getting into some specific grounds in Mr. Smith's defense, did Mr. Smith ever discuss with you an entrapment defense?
>
> A No, not at all. It was the opposite.
>
> Q How so?
>
> A In that it was a denial of the charges of – he's charged with possession of a firearm by a convicted felon, he never possessed a firearm. So it wasn't an entrapment, it was it did not happen.

Doc. 13 Ex. at 6. Defense counsel further testified that an entrapment argument would

have been inconsistent with the theory of defense:

> Q . . . During the trial, Mr. Crowley, did you and Mr. Smith discuss any defense theories of the case?
>
> A When you're doing a trial, you're talking to your client throughout the trial. If you're asking did he raise an entrapment defense?
>
> Q Uh-huh.
>
> A No. It was totally inconsistent with him saying I didn't have anything to do with selling this. You can't have both, you know. I mean, it's not an

alternate I didn't do it, but if I did, I was entrapped.  The theory of the case
was it didn't happen, he didn't do it.

*Id.* at 14-15.  Defense counsel testified further, on cross-examination:

Q Okay.  The defense in the case, when you said that to your
understanding in order to get the defense of entrapment you have to admit
the commission of the crime and say it was – you wouldn't have done it
but for the bad acts of law enforcement or somebody working for law
enforcement?

A Correct.

Q Okay.  And had Mr. Sheffield Smith ever admitted to you his
involvement in this crime in order to establish an entrapment defense?

A  No.  The whole theory of the case is he wasn't – there was a fingerprint
analysis that testified at the hearing too, that his fingerprints were not on
the weapon.

Q So during the time that you represented Mr. Smith, he consistently was
a denial [sic] of the commission of the crime?

A Correct.

Q And at no time then was an entrapment defense evaluated because of
that fact that he was denying commission of the crime; is that right?

A Correct.

*Id.* at 17-18.  Defense counsel explained the theory of defense was that the weapon

was not Smith's; rather, the weapon belonged to his uncle, Clarence Aikens.  *Id.* at 22.

In addition, at the evidentiary hearing, Petitioner Smith testified that he denied having

possession of the firearm:

Q Now you say you talked about entrapment.  Mr. Smith, did you ever
admit that as a convicted felon you had possession of that firearm?

A No, sir.

Q Okay.  Are you denying that you ever had possession of that firearm?

A Yes, sir.

*Id.* at 36.

Based on the foregoing, Smith has not shown the state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  As defense counsel indicated in his testimony during the evidentiary hearing, generally a defendant who denies committing the charged offense cannot claim entrapment as a defense.  *See* Wilson v. State, 577 So. 2d 1300 (Fla. 1991); Green v. State, 34 So. 3d 783, 784 (Fla. 2d DCA 2010) (citing section 777.201(1), Florida Statutes, regarding entrapment and explaining: "By this definition, to present an entrapment defense, one would have to admit that he or she committed the crime but did so only because of the actions of law enforcement."); Ul Haq v. State, 997 So. 2d 1284, 1285 (Fla. 4th DCA 2009) (explaining "an entrapment defense requires that the defendant admit he was a knowing participant" in the offense).  This ground should be denied.

### <u>Ground 3</u>: IAC - Eliciting Damaging Trial Testimony from Clarence Aikens

In his third ground, Petitioner Smith asserts his attorney rendered ineffective assistance for eliciting damaging trial testimony from Clarence Aikens.  Doc. 9 at 5, 6D-6E.  As Respondent indicates, Smith presented this ground to the state court as the second claim in his Rule 3.850 motion.  Doc. 13 at 8; *see* Doc. 13 Ex. K at 70-78.  The

state post-conviction trial court denied the claim, making the following findings on the

record at the conclusion of the evidentiary hearing:

> The ground that is asserted that the trial counsel was ineffective by calling Mr. Aikens, his uncle, as a witness that provided a basis for convicting his client is an invalid ground.  Mr. Crowley was surprised by the testimony of the witness.  It was inconsistent with what the witness told Mr. Crowley he could provide at trial.  And there was no way for Mr. Crowley to impeach the testimony of that surprise witness.

*Id.* Ex. M at 43.  These rulings, affirmed on appeal without opinion, are entitled to

AEDPA deference and review is limited to the record before the state court.  *See* 28

U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright, 278

F.3d at 1255.  The record supports the state court's findings.

In particular, defense counsel testified at the evidentiary hearing:

Q . . . Do you remember Mr. Clarence Aikens' testimony?

A Again, not word for word.  I mean, it was three years ago.  But I remember what the nature of it was.

Q Do you remember asking him about things that Mr. Smith had said at the house?

A That's too general for me.  I don't know what you're asking me.

Q Well, if you want me to be more specific, do you recall asking Mr. Aikens about an incident where Mr. Smith asked Shawn Aikens to go get the gun?

A I believe – again, I have not reviewed the transcript.  I'm trying to remember when this incident was alleged to have occurred, it was at a trailer here, I believe it was.  I think it was the uncle's trailer, if I'm recalling correctly.  And the nephew may have been there.  So that may have been the testimony, yes.

Q Following Mr. Aikens' testimony, did you attempt to cure any incriminating nature of that testimony?

A Did I what, I'm sorry?

Q Attempt to rectify, correct parts of that that were incriminating towards Mr. Smith?

A The one part of his testimony that I recall is that he testified different as to the ownership of the weapon when I asked him at trial and when he was at my office.

Q What did he testify to at trial?

A It wasn't his weapon.

Q Did he say whose weapon it was?

A I believe – I believe he said it was Mr. Smith's.

Q Did you attempt to impeach him with any prior inconsistent statements?

A No.  There was two witnesses to that conversation I had had with him.  I had a statement from him.  It wasn't under oath or anything.  And it was said to me.

Q If there had been incriminating testimony that was obtained on direct examination, would that have had any strategy decision behind it?

A Again, you're asking me a general question that I can't answer, you know.

Q If the testimony that we just discussed.

A Yes.

Q If it came out that way, was it strategic to let it in or was it oversight?

A It was neither.  It was opposite of what I was told when I had talked to him in my office.

Doc. 13 Ex. M at 15-17.  On cross-examination, defense counsel testified:

Q Mr. Crowley, I understand on – well, let's just go on that last thing there. You had a discussion with Mr. Sheffield and his witness, Clarence Aikens at your office?

A Correct.

Q Okay.  And in that discussion, Mr. Clarence Aikens, along with the defendant, made certain representations about the firearm; is that correct?

A Correct.

Q And based upon what Mr. Aikens was testifying or telling you at the office, that's why you called him as a defense witness?

A Correct.

Q And during the trial, though, did he then change the testimony from what you had expected?

A Oh, yes.

Q Okay.  And that was the difference as to the ownership of the firearm?

A Right, which was the basis of the charge.

Q So you were calling him for one thing, but unfortunately he testified contrary to what he had earlier told you, and the only people that were present were yourself and the defendant?

A No, and Mr. – his uncle was there.

Q I mean, what the uncle, Mr. Clarence Aikens told you, the only people that witnessed that was yourself and the defendant?

A Correct.

Q Okay.  And so when the uncle testified differently, that was a surprise?

A Yes.  If he was – yes.

Q You didn't know that was coming until the witness testified to that?

A Correct.

*Id.* at 17-18.  Defense counsel explained that the uncle testified the weapon was not his, it was at his home, but the weapon was Mr. Smith's and "he was just keeping it there." *Id.* at 22.  Defense counsel further explained that, when he interviewed the uncle at his office, the uncle told counsel the firearm belonged to him, but at the trial, the uncle testified it was Mr. Smith's firearm.  *Id.* at 22-23.

The record thus supports the state post-conviction trial court findings of no ineffective assistance of counsel.  Defense counsel expected the uncle, Clarence Aikens, to testify the gun was his, based on their previous discussion; however, at trial, the uncle did not so testify and defense counsel was surprised.  The trial transcript reflects that Aikens testified Smith and another individual arrived at his home and "[h]e asked my son about he wanted to get his gun."  Doc. 13 Ex. B at 127; *see id.* at 131 (Aikens' testimony on cross: "He said, I come to get my gun, get the gun.").  He testified his son (Shawn Aikens) then went inside the house, got the gun, brought it out and "shot it up in the air."  *Id.* at 128.  He testified his son then gave the weapon to Williams; Smith did not touch the weapon at all.  *Id.* at 129-30.

This was not deficient performance of counsel.  Although Aikens may not have testified as defense counsel expected, his testimony did contradict that of the State's witness (Williams) who testified that Smith retrieved the gun, fired it, and put it in the back of the car. *See* Doc. 13 Ex. B at 73-74.

Smith has not shown the state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 4: IAC - Failure to Investigate and Call Shawn Aikens as Witness

In his fourth ground, Petitioner Smith asserts his attorney rendered ineffective

assistance for failing to investigate and call as a witness Shawn Aikens, the son of

Clarence Aikens.  Doc. 9 at 5, 6F-6G.  As Respondent indicates, Smith presented this

ground to the state court as the fourth claim in his Rule 3.850 motion.  Doc. 13 at 10;

*see* Doc. 13 Ex. K at 80-81.  The state post-conviction trial court denied the claim,

making the following findings on the record at the conclusion of the evidentiary hearing:

> Failure to call that witness' son is not ineffective assistance of
> counsel.  The defendant never brought that witness to Mr. Crowley to
> interview, never told him a phone number where he could be reached, an
> address where he could be contacted.  The father and the nephew of the
> defendant in this case said that this other witness would testify to the
> same thing that the testifying witness was expected to testify to at trial.
> There would have been nothing different.
>
> There is no ineffectiveness on the part of Mr. Crowley for not calling
> him as a witness when it was expected that his only information would
> have been cumulative with what his father would have testified to and he
> had no information that would show where that witness could be located to
> begin with.

Doc. 13 Ex. M at 43-44.  These rulings, affirmed on appeal without opinion, are entitled

to AEDPA deference and review is limited to the record before the state court.  *See* 28

U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright, 278

F.3d at 1255.  The record supports the state court's findings.

In particular, defense counsel testified at the evidentiary hearing regarding

attempts to meet and get information from Shawn Aikens:

Q . . . Do you remember when Mr. Smith told you about the testimony of a possible witness named Shawn Aikens (phonetic)?

A The exact date?

Q Right.

A No.  It was one of the conversations we had.  And Mr. Smith and his uncle came to my office up in Quincy.  We sat down and talked about it.  I believe it was his nephew or his cousin was supposed to come up for that interview, did not want to come for whatever reason.  I was talking to Mr. Smith and his uncle.  Went over what the uncle knew about this.  They were telling me that the nephew didn't want to be involved in it, didn't want to come.  So I'm trying to find out what he may have been able to testify to and also what the uncle is going to testify to.  And that was going to be the same type of testimony.

Q Was that before the trial in this case?

A Oh, yes.

Q Did you ever make an effort to contact Mr. Shawn Aikens?

A I believe I did.  I did not have a phone number and that's why I was relying on him to get in touch with him for me because I did not have an address or a phone number.

Q Were you ever able to make contact with Mr. Aikens?

A Jr. or the –

Q Shawn Aikens?

A No.

Q At what point in time did you suggest to Mr. Smith that he needed to procure Mr. Aikens' testimony?

A This is before – well, not quite in those terms.  He told me of the witnesses, the possible witnesses he had in his case.  It was him, Mr. Shawn Aikens and the older gentleman.  And that's when the appointment was set up for them to come into my office and talk.  Mr. Smith came in. His uncle came in.  And that's when – the younger Aikens did not come in.

And that's when they told me that he didn't want to come.  And that's when I asked them what the nature of his testimony could be.

Q What were you told?

A That when the shotgun, or when the weapon, I'm sorry was purchased or sold, that the uncle was there and the nephew was there.  And from what I was told, it would not be cumulative but it would be the same testimony that the uncle was going to testify to.

Q Were you able to ascertain that Shawn actually stayed at the same residence as Clarence Aikens?

A When I asked for their address and phone number, I wasn't given one. So no, the answer to that is.

Q Did you attempt to serve a subpoena on Mr. Shawn Aikens?

A No, I did not, for the same reason.

Doc. 13 Ex. M at 6-8.  Defense counsel also testified that he did not attempt to depose

Shawn Aikens.  *Id*. at 9.  Defense counsel further testified:

Q Mr. Crowley, about how much time did you have before the trial after the name Shawn Aikens was first mentioned to you?

A I can't – again, I can't give you a specific.  It wasn't two days before or anything like that.  It was a couple – at least a couple of weeks.

Q Did you ever direct an investigator to try to find Mr. Shawn Aikens?

A I talked to my investigator at the time.  Again, I was relying upon Mr. Smith – these were friendly witnesses to him, they weren't witnesses trying to hide.  Again, I asked if he did testify what would be the difference between his testimony and the uncle's testimony.  It was going to be the same.  So it turned out the uncle's testimony was different.  But what I was told in my office, it was going to be the same.  He was there.  They may have gone in and gotten the weapon from the trailer, I don't think you asked that, but I think that was his involvement.

Q Mr. Smith did not explain to you that Shawn Aikens would actually testify he was the provider of the firearm?

> A Absolutely not.
>
> Q But you were never able to make contact with Mr. Shawn Aikens to verify what he would say?
>
> A No, I never had an address or a phone number.  That's why I was relying upon him.  They were family is what I was told.  And he was supposed to bring them to my office, I think.

*Id.* at 24-25.

In his testimony at the evidentiary hearing, Petitioner Smith stated that Shawn Aikens was not a trial witness because "he wasn't never asked for a witness."  *Id.* at 35. Petitioner also testified:

> Q But your uncle was here for the trial?
>
> A Yes, sir.
>
> Q And supposedly Shawn Aikens was going to testify to the same thing Clarence Aikens would testify to?
>
> A Yes, sir.
>
> Q or did testify to?
>
> A Yes, sir.

*Id.* at 35-36.

Based on the foregoing, the record supports the state post-conviction trial court's findings of no ineffective assistance of counsel.  *See, e.g.*, Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1987) ("Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."). Smith has not shown the state courts' rulings rejecting this claim resulted in a decision

that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 5: IAC - Cumulative Error

In his fifth and final ground, Petitioner Smith asserts cumulative ineffective assistance of counsel.  Doc. 9 at 6I.  The Eleventh Circuit has rejected such an argument in a § 2254 proceeding.  *See* Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" but "the Supreme Court has held, in the context of an ineffective assistance of counsel claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))).  Moreover, because each of Smith's individual claims fail, the cumulative error claim likewise fails.  As demonstrated by the above analysis, the state post-conviction trial court's adjudication of Smith's IAC claims did not involve an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### Conclusion

Based on the foregoing, Petitioner Sheffield T. Smith is not entitled to federal habeas relief.  The amended § 2254 petition (Doc. 9) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner

Smith's amended § 2254 petition (Doc. 9).  It is further **RECOMMENDED** that a

certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.  The Clerk shall substitute Michael D. Crews for Kenneth S. Tucker as

Respondent.

   **IN CHAMBERS** at Tallahassee, Florida, on September 25, 2014.


         S/  Charles A. Stampelos_____
         **CHARLES A. STAMPELOS**
         **UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

   **A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**